# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JODY A. LIBMAN and TAMI S. LIBMAN,

    Plaintiff,

    v.

GREAT NORTHERN INSURANCE COMPANY
and FEDERAL INSURANCE COMPANY,

    Defendants.

No. 16 C 2986

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Jody and Tami Libman allege that Great Northern Insurance Company failed to pay for damage to a residential building they owned in breach of a property insurance policy.[1] The Libmans and Great Northern have cross-moved for summary judgment on the limited issue of whether the Libmans' sale of the building after the damage occurred serves to limit their loss. R. 63; R. 65. For the following reasons, the Libmans' motion is denied and Great Northern's motion is granted in part and denied in part.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all

---

[1] The Libmans allege that defendant Federal Insurance Company owns Great Northern. R. 50 ¶ 11.

of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Background**

The Libmans renewed a property insurance policy with Great Northern on August 30, 2014, covering a building they owned in Chicago. Sometime in the fall of 2014, the property went into foreclosure and the Libmans agreed to a short sale to extinguish their debt. Before the sale closed, extensive water damage occurred in the building on December 4, 2014. The Libmans contracted to mitigate the damage but did not fully repair the property. Despite the damage, the short sale closed on December 29, 2014, for the original sale price, with no reduction for the damage to the property.[2] Jody Libman filed this case in state court on February 4, 2016, and it was removed to this Court on March 9, 2016.

---

[2] In their reply brief the Libmans state, "Prior to the damage, the Plaintiffs were facing a foreclosure action and had entered into a contract for a short sale. After the damage, the Plaintiffs sold the property to the short sale buyer for the previously agree contract price, which eliminated all debt on the property." R. 72 at 1. The parties' statements of material fact and response are not so clear. In their response to Great Northern's statement of material facts, the Libmans admit that their benefit from the short sale, as agreed to before the water damage incident, was to

2

On October 17, 2017, the parties filed a joint motion seeking to stay discovery and leave to file cross motions for summary judgment on "case dispositive issues," R. 61, which the Court granted. In its summary judgment motion, Great Northern does not dispute that the policy provides coverage for the mitigation costs the Libmans paid. But in addition to the mitigation costs the Libmans seek the "replacement cost of the property," under a provision of the policy providing for such payment when the insured chooses not to "repair, replace or rebuild." Great Northern argues that the Libmans have not suffered a loss beyond the mitigation costs because they sold the building for a benefit that was not discounted due to the damage. Great Northern argues that the Libmans would receive an inequitable "double recovery" if they are paid the replacement cost of the building in addition to the benefit from the short sale. The Libmans argue that the policy contains no provision limiting recovery in this manner. Both parties seek summary judgment in their favor on this issue.

---

"be relieved of all the obligations under both notes." R. 71 at 5 (¶ 16). Great Northern also asserts in its statement of material facts that the Libmans were in fact relieved of all obligations under the notes upon the close of the short sale after the water damage occurred. *See id.* at 6 (¶ 20). The Libmans, however, did not respond to this factual assertion, but instead only responded to (and disputed) a second part of the factual assertion. The Court considers the Libman's failure to directly address this statement of fact by Great Northern to be an admission. However, should there be evidence that the Libmans did not receive the benfit agreed to before the water damage occurred, and that the water damage resulted in a diminishment of the benefit the Libmans received from the sale, they may file a motion to reconsider on that basis.

## Analysis

**I.  The Scope of the Joint Motion**

Before addressing the "double recovery" issue, the Court must resolve a dispute the parties have over the proper scope of these cross motions for summary judgment. In addition to the "double recovery" issue, Great Northern seeks summary judgment based on alleged misrepresentations Jody Libman made during Great Northern's investigation of the water damage, which Great Northern argues completely relieves it of any obligation to pay under the policy (including the mitigation costs). The Libmans cry foul and argue that this issue is beyond the scope of the issues contemplated by the "joint motion" that precipitated these cross-motions, and should not be addressed until they can have further discovery on this issue. The Libmans, however, do not explain what further discovery they might need to adequately address this issue.

Generally, under Federal Rule of Civil Procedure 56(d), a party's contention that they cannot respond to a summary judgment motion without additional discovery must be supported by "affidavit or declaration" setting forth "specified reasons." Although the Libmans have failed to do this here, the Court finds that the parties' joint motion did not clearly provide that issues beyond "double recovery" were to be briefed. In the "joint motion," the parties stated that "discovery concerning the issue of double recovery" was complete, and that settlement discussions could not proceed without a ruling on "case-dispositive issues." The parties further described their dispute about the significance of the building's sale,

and explained that "[e]xpert and remaining discovery will be expensive and unnecessary depending upon the court's ruling on dispositive motions."

Despite these direct references to "double recovery" and the effect of the sale on the Libmans' loss, paragraphs two and seven of the "joint motion" use the terms "case-dispositive issues" and "dispositive motions" without direct reference to the "double recovery" issue. This creates some ambiguity about the parties' intent regarding the scope of the "dispositive motions," which has resulted in this dispute. Considering the apparent miscommunication between the parties, the Court will address only the issue of "double recovery" at this time, and will reserve ruling on the issue of Jody Libman's alleged representations.

## II. "Double Recovery"

In discussing the case law relevant to the "double recovery" issue, the Libmans note that "it would be inequitable for a party to receive the full value of a policy without having suffered a loss." R. 70 at 14. Illinois courts agree with this assertion, holding that property insurance policies must be "construed" according to the "fundamental purpose of insurance coverage," which is "indemnity for actual loss." *Paluszek v. Safeco Ins. Co. of Am.*, 517 N.E.2d 565, 568 (Ill. App. Ct. 1st Dist. 1987). In other words, "[u]nless and until an actual loss is sustained and proved by the insured, he is not entitled to reimbursement by the insurer." *Id.*

Here, the Libmans have not suffered any actual loss beyond the cost of the immediate mitigation they contracted for. They sold the property after it was damaged for the same benefit that was agreed to before the damage occurred. Since

5

the Libmans were not forced to discount the benefit from the sale as a result of the damage, they have not suffered any actual loss. *See Beman v. Springfield and Marine Ins. Co.*, 25 N.E.2d 603, 607 (Ill. App. Ct. 1st Dist. 1940) ("Plaintiffs have been indemnified through the repair of the building by the owner and the sale by them at a figure of which was 'as much as they would have received from their buyer had the fire never occurred.' Hence, they have sustained no loss under the policy.").

The Libmans argue that the policy does not include any requirement (1) that they continue to own the property in order to recover or (2) that a sale of the property extinguishes the insurance company's obligation to pay for physical damage to the building. Their focus on the express language of the policy, however, ignores the guidance of Illinois courts that insurance contracts must be interpreted in accordance with principles of indemnity. Prior to reaching the question of whether an event occurred that might trigger the policy's coverage provisions, the Court must ask whether the Libmans suffered actual loss requiring indemnification. The answer here (beyond their mitigation costs) is no, because the sale relieved the Libmans of the consequences of the damage to the building, such that they suffered no further actual loss. *See Ely v. First Specialty Ins. Co.*, 2008 WL 10876067, at *3-4 (Ill. App. Ct. 1st Dist. Dec. 31, 2008) ("Plaintiffs assert that . . . the defendant should not be permitted to take advantage of a collateral real estate sale contract existing and enforceable only as between vendor and vendee so as to escape liability for an insurance policy contracted for between the parties. . . . [But]

6

the collateral contract is not being use to fix the value of the insured property or the actual cash value of the loss, . . . rather, the completed sale helps determine the amount that plaintiffs have already been indemnified after the loss.").

The Libmans also argue that insurance "does not run with the property when transferred," and that relieving the insurance company of its obligation to pay for the damage to the building in effect improperly construes the policy as "insurance on the property," when it is actually insurance "on the interest of the person insured." R. 70 at 14 (citing *Paluszek*, 517 N.E.2d at 568; *Third Establishment, Inc. v. 1931 N. Park Apartments*, 417 N.E.2d 167, 173 (Ill. App. Ct. 1st Dist. 1981)). Although the Libmans are correct that "insurance does not run with the property," this simply means that Defendants do not have to indemnify the *new* owners of the building. The physical damage, however, certainly runs with the property. Once the Libmans no longer owned the damaged property, unless that physical damage manifested as actual loss to the Libmans that they carried with them after the sale, they could not recover under the policy. Since the Libmans have not alleged that they suffered actual loss due to the property damage, summary judgment must be granted to Defendants on any damages the Libmans seek beyond what they paid to mitigate the damage before they sold the property.

**Conclusion**

For the foregoing reasons, the Libmans' motion, R. 63, is denied, and Great Northern's motion, R. 65, is granted in part and denied in part. The Libmans must file a status report by February 21, 2018, explaining what additional discovery they

7

require to respond to Great Northern's argument that Jody Libman's alleged misrepresentations serve to relieve Great Northern of its obligation to pay under the policy. At the status hearing set for February 22, 2018, the Court will set a schedule for such discovery, to the extent it is necessary, and a schedule for briefing on that issue. The parties should be prepared to discuss whether allowance of time for settlement discussions, or a referral to the magistrate judge for a settlement conference, would be helpful before further discovery or motion practice takes place. Any additional discovery regarding the extent of the Libmans' damages is stayed for the time being.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: February 15, 2018